DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Marcus McKinney, appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 2, 2008, Kimberly Richmond ("Richmond") contacted the police and requested them to come to her home to ask her long-term, live-in boyfriend, Marcus McKinney ("McKinney") to leave. The police responded and told McKinney to go somewhere else for the night. Several hours later, two Barberton police officers responded to a domestic violence call at the Richmond's home. Richmond informed the officers that McKinney had threatened to kill her and had tried to pull her out of a window. Richmond wrote and signed a witness statement containing these allegations.
 {¶ 3} On July 16, 2008, McKinney was indicted on one count of domestic violence, in violation of R.C. 2919.25(A), a third degree felony, and one count of domestic violence, in *Page 2 
violation of R.C. 2919.25(C), a first degree misdemeanor. McKinney pled not guilty to these charges, and on September 15, 2008, the matter proceeded to a jury trial. At the trial, Richmond testified that she did not remember the July 2, 2008 incident because she had been drinking and had blacked out. During the trial, McKinney twice requested a mistrial, which the trial court denied.
 {¶ 4} On September 16, 2008, the jury found McKinney not guilty of the felony domestic violence charge and guilty of the misdemeanor charge. McKinney was sentenced to six months of incarceration. He timely appealed his conviction. He has raised four assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS UNSUPPORTED BY THE EVIDENCE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DENYING THE CRIMINAL RULE 29 MOTION FOR ACQUITTAL."
 {¶ 5} In his first and second assignments of error, McKinney contends that his conviction was against the manifest weight of the evidence and was not based on sufficient evidence. While McKinney alleges in his first assignment of error that his conviction was against the manifest weight of the evidence, his supporting argument focuses on the sufficiency of evidence. His argument as to his first assignment of error neither refers to the credibility of witnesses nor does it request this Court to weigh the evidence. See App. R. 16(A)(7) (requiring an appellant to support his assignment of error with an argument and reasons in support of his *Page 3 
contentions). As such, we read McKinney's first two assignments of error as an argument that his conviction was not based on sufficient evidence. We do not agree with this contention.
 {¶ 6} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion.State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 7} McKinney was convicted of domestic violence, in violation of R.C. 2919.25(C). This section states that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." R.C. 2919.25(C). Specifically, McKinney contends that the prosecution failed to show: 1) that Richmond was in fear of imminent physical harm and 2) that there was a threat of force. We do not agree.
 {¶ 8} While not defined by the Revised Code, the Ohio Supreme Court has approved of a definition of the term "threat."
 "The term `threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct. See Planned Parenthood League of Massachusetts, Inc. v. Blake (1994), 417 Mass. 467, 474, (defining `threat' as `the intentional exertion of pressure to make *Page 4 
another fearful or apprehensive of injury or harm')." State v. Cress, 112 Ohio St.3d 72, 2006-Ohio-6501, at ¶ 39.
 {¶ 9} Our review of the evidence reveals that the State clearly presented evidence that McKinney threatened to kill Richmond. During her testimony, Richmond confirmed that she had written the police statement that was taken soon after the incident occurred at her home. Richmond read the statement, in which she said that McKinney threatened to kill her and tried to pull her out the window. Further, Barberton Police Officer Jeffrey Donley testified that he responded to the scene of the incident. He testified that when he arrived at the scene, Richmond informed him that McKinney had threatened to hurt her, that he had grabbed her and tried to pull her out the window, and that he had ripped her shirt. He asked Richmond to provide a written statement regarding her version of the incident. He verified that the written statement presented at trial was the statement Richmond prepared on the night of the incident. Officer Donley also testified to photos of the ripped tee-shirt. We conclude that the State presented sufficient evidence that McKinney threatened to cause Richmond imminent physical harm.
 {¶ 10} We turn next to McKinney's argument that the State did not provide sufficient evidence to show that Richmond was in fear of imminent physical harm, i.e. that she believed that McKinney would cause her imminent physical harm.
 {¶ 11} Imminent has been defined
 "as `ready to take place,' `near at hand,' `impending,' `hanging threateningly over one's head,' or `menacingly near.' `Imminent' does not mean that `the offender carry out the threat immediately or be in the process of carrying it out.' Rather, the critical inquiry is `whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm[.]' (Internal quotations and citations omitted). State v. Tackett, 4th Dist. No. 04CA12, 2005-Ohio-1437, at ¶ 14.
 {¶ 12} Richmond's daughter, Twighla Richmond, testified that during the incident, her mother asked her to call 911. When asked how her mother was acting, Twighla stated that "[s]he *Page 5 
was just scared[.]" Barberton Police Officer David Dawson, who responded to the scene, testified that Richmond "was hysterical. She was scared[.]" Officer Donley stated that Richmond "was upset, nervous, a little bit shaky. She seemed a little bit afraid." Officer Donley testified that Richmond informed him that she was afraid for her safety when McKinney threatened to kill her. Finally, we note that Richmond testified that she had been the victim of one of McKinney's prior domestic violence convictions. The testimony indicating that Richmond was afraid provides proof that she believed that McKinney would cause her imminent physical harm. Based upon this testimony, we conclude that, after viewing the evidence in a light most favorable to the prosecution, the jury could have found that 1) McKinney threatened to cause Richmond imminent physical harm and that 2) Richmond believed McKinney would cause her imminent physical harm.
 {¶ 13} Accordingly, McKinney's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "[MCKINNEY'S] CONVICTION MUST BE OVERTURNED IN THAT HE WAS NOT PROVIDED WITH COMPETENT TRIAL COUNSEL."
 {¶ 14} In his third assignment of error, McKinney contends that his conviction must be overturned because his trial counsel was ineffective. We do not agree.
 {¶ 15} In evaluating a claim of ineffective assistance of counsel, this Court employs the two step process as described in Strickland v.Washington (1984), 466 U.S. 668, 687. First, the Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396. Second, the Court must determine if McKinney suffered prejudice from his counsel's ineffectiveness. Bradley, 42 Ohio St.3d at 141-142, citingLytle, 48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial *Page 6 
result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. McKinney bears the burden of proof, and must show that his "`counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687.
 {¶ 16} McKinney contends that his trial counsel was ineffective for failing to object to out-of-court statements regarding what happened on the night in question. He claims that his counsel was ineffective for failing to object to Richmond's out-of-court statements. McKinney only points this Court to one of Twighla Richmond's out-of-court statements. Accordingly, we limit our discussion to this sole statement. See App. R. 16(A)(7) and 12(A)(2). See, also, Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *8 (stating that "[i]f an argument exists that can support this [alleged] error, it is not this court's duty to root it out").
 {¶ 17} We may "analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citing State v. Loza (1994), 71 Ohio St.3d 61,83 (overruled on other grounds).
 {¶ 18} McKinney makes no argument that any alleged failure to object to Twighla's out-of-court statement resulted in prejudice. Notwithstanding the omission, we conclude that McKinney cannot demonstrate prejudice. He specifically takes issue with Officer Dawson's testimony that Twighla informed him of her mother's condition upon arrival at the scene. We fail to find any prejudice resulted from this testimony, as both police officers and Twighla herself testified to Richmond's condition on the night in question. Therefore, even without Officer Dawson's recounting of Twighla's out-of-court statement, the jury heard evidence of *Page 7 
Richmond's condition on July 2, 2008. Accordingly, McKinney's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT THE MOTIONS FOR MISTRIAL."
 {¶ 19} In McKinney's fourth assignment of error, he contends that the trial court abused its discretion in failing to grant his motions for a mistrial. We do not agree.
 {¶ 20} Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v. Stewart
(1996), 111 Ohio App.3d 525, 533. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 21} McKinney twice moved for a mistrial. He first moved for a mistrial during Richmond's direct examination. McKinney based his motion on the fact that testimony was introduced regarding a prior offense and that portions of several jail house phone calls were played for the jury. McKinney stated that the jail house phone calls had no relation to the offense itself and that they contained discussions about court that only served to prejudice the jury. McKinney has not developed his argument on appeal with regard to this first motion for mistrial. App. R. 16(A)(7). He has not explained why the trial court's decision not to grant a mistrial on this basis was an abuse of discretion, choosing to instead focus on his second request for a mistrial. Accordingly, we decline to address this portion of McKinney's assigned error. App. R. 12(A)(2). *Page 8 
 {¶ 22} McKinney's second request for a mistrial was based on several factors. On appeal he contends that the trial court abused its discretion in failing to grant a mistrial based on the State's improper reference to McKinney's parole. The record shows that the trial court gave a curative instruction in which it explained that evidence of his prior crimes was not to be considered to prove McKinney's character or that he acted in conformity with that character in this particular case. Further, the trial court explained that the prior convictions for domestic violence were received because a prior conviction was an element to the current charge and that they could not be considered to prove McKinney's character.
 {¶ 23} "It is well established that a jury is presumed to follow a curative instruction given it by a trial judge." Perillo v. Fricke, 08CA0044-M, 2009-Ohio-1130, at ¶ 15, citing State v. Garner (1995),74 Ohio St.3d 49, 59. McKinney contends that the jury clearly did not follow the curative instruction because there was no evidence to support the charge. He further contends that the jury must have found him guilty because he was a "bad man" or that he was "guilty" because he was on parole. This argument is without merit. We determined in our disposition of the first two assignments of error that there was sufficient evidence from which the jury could have convicted him. Finally, we note that McKinney was acquitted of the felony domestic violence charge. As the prior conviction was an element of this charge, we conclude that the jury was not prejudiced by the introduction of this evidence. SeeState v. Smith (1990), 68 Ohio App.3d 692, 695-96. Accordingly, the trial court did not abuse its discretion when it denied McKinney's request for a mistrial. McKinney's fourth assignment of error is overruled.
 III. {¶ 24} McKinney's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed. *Page 9 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, J. BELFANCE, J. CONCUR. *Page 1